## Kerrigan *v.* Pardee.

*Mines and mining—Contract—Custom—Evidence.*

In an action by a miner to recover for coal mined, the only direct evidence as to the contract was the testimony of defendant's foreman that he told plaintiff and his "buddy" to "go in and take that breast." Plaintiff gave no express testimony as to the terms of the contract and stated his claim to be for all the coal that came into the breast as the result of his blasting. Plaintiff worked for awhile on the breast, but was forced out by a "squeeze." *Held*, (1) that it was error to permit an expert to testify as to the quantity of coal in the solid breast, inasmuch as the breast had been previously mined, and plaintiff only claimed that coal loosened by his blasting had run in from the surrounding vein and filled the cavity; (2) that it was error to permit an expert to testify as to the custom of mining a breast by a car on the run as distinguished from driving coal by the lineal yard, there being no evidence whatever of a contract to mine "on the run."

Argued April 11, 1900.   Appeal, No. 73, January T., 1900, by defendant, from judgment of C. P. Luzerne Co., June T., 1887, No. 226, on verdict for plaintiff in case of Mary Kerrigan, Administratrix of James Kerrigan, v. Calvin Pardee, Administrator.   Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Assumpsit for coal mined.   Before HALSEY, J.

The facts appear by the opinion of the Supreme Court.

At the trial W. F. Dodge was asked this question :

" Q. You have made measurements of breasts from time to time?   A. Yes, sir, I have.   Q. Now, Mr. Dodge, taking a breast sixteen yards wide, thirty feet high, and sixty-five yards in length, what would be the number of tons in that breast if it were full?"

Defendant's counsel: We object to the question as immaterial and irrelevant in this case.   The plaintiff, who testified in his own behalf, and whose testimony has been read to your honor, testified that he drove this breast No. 64 forward ten to twelve feet; that he drove No. 74 forward from four to five feet; he testifies that these were both old breasts when he commenced working there, and that they were full of gob, and it was necessary to make a way up to the face of the coal by

putting up timbers along the edge of the gangway and make a three-cornered passageway up. The question asked the witness is what is the contents of a breast sixteen yards wide, by thirty feet high, by sixty-five yards long, which is a perfectly irrelevant inquiry.

The Court: I think it is for the jury. Objection overruled, exception noted for the defendant, bill sealed. [1]

"A. May I ask if it is in the Mammoth vein, or what vein it is? Q. The Mammoth vein, yes, sir. A. Taking that in solid as originally, without being blasted or broken up, allowing five per cent for the blasting, taking the coal at ninety-two and one half pounds to the cubic foot, and allowing five per cent for the blasting and loading waste, that solid would yield 11,000 tons in round numbers. Q. How much would it be in the loose? A. That would be in the loose. Q. In the loose? A. Yes, sir. It would be the same way; it would not make any difference, the same number of tons as in the solid, of course. Q. How many cars would that be? A. Dividing 11,000 by two, would be 5,500."

Mr. Dodge was also asked the question:

"Q. Are you familiar with the custom of mining down in the Hazleton region? A. I am acquainted with it up in this region where they work on the run or where they used in former years; they don't now. Q. What do you mean by on the run? A. For instance, a man takes a breast to drive it up here—"

Defendant's counsel: We ask that the plaintiff make an offer of testimony, and the purpose.

Plaintiff's counsel: We propose to prove what is coal on the run. This for the purpose of showing that is the way this coal was mined.

Defendant's counsel: Objected to as irrelevant and immaterial.

The Court: We will take it. Objection overruled, exception noted for the defendant, bill sealed. [2]

"A. There is a difference between driving coal on the yard and by the car on the run. A man driving a breast by the car on the run is entitled to all the coal that runs into the breast and down to the loading platform no matter where it may come from. If he is driving on the lineal yard he is only entitled to length measure of the breast. That makes a difference."

Defendant presented these points:

1. That under the contract as proved by the plaintiff he can recover nothing except for coal cut or mined and loaded in the cars, unless he was prevented by the defendant from loading coal that had been cut, without any sufficient reason. *Answer:* We decline to charge as requested in that point. [3]

4. That the testimony in this case is too vague and unconclusive to justify a verdict for the plaintiff. *Answer:* We decline to charge as requested in that point for the reasons we have already given. [4]

Verdict and judgment for plaintiff for $3,371.25. Defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions; (3, 4) above instructions, quoting them.

*Henry W. Palmer* and *G. H. Troutman,* for appellant.

*E. A. Lynch* and *John T. Lenahan,* for appellee.

OPINION BY MR. JUSTICE MITCHELL, July 11, 1900:

Plaintiff was employed in 1883 as a miner and was to be paid for each car of coal loaded and sent out on the mine cars. A cave in or what is called a "squeeze" having occurred, plaintiff was transferred to another part of the mine, and the breasts upon which he had been working were abandoned. He continued working about two years longer, and then a strike took place after which he was not re-employed. In 1887, four years after the alleged cause of action arose, he brought this suit. So far the facts are undisputed. It is further admitted that plaintiff was paid for all the coal sent out according to the contract from the breasts where the squeeze occurred, and for his subsequent work elsewhere in the mine. But it is claimed that by his contract he was entitled to load and send out all the coal that came into the breast from any source, whether directly the result of his own operations or not, and that at the time his work was stopped, the breasts had filled up with coal which he was thus prevented from getting pay for.

The first assignment of error is to the admission of the tes-

timony of Mr. Dodge as to the quantity of coal in the breasts when plaintiff was taken off the work. He was asked, "Taking a breast sixteen yards wide, thirty feet high, and sixty-five yards in length, what would be the number of tons in that breast if it were full?" After objection overruled he answered, "Taking that in solid as originally, without being blasted or broken up, allowing five per cent for the blasting, taking the coal at ninety-two and one half pounds to the cubic foot, and allowing five per cent for the blasting and loading waste, that solid would yield 11,000 tons in round numbers. Q. How much would it be in the loose? A. That would be in the loose. Q. In the loose? A. Yes, sir. It would be the same way, it would not make any difference, the same number of tons as in the solid, of course." As the witness was an intelligent and educated mining engineer, it is evident that he completely misunderstood either the question itself or its application to the case. No doubt he stated correctly the tons of coal in a solid block of the dimensions named and no doubt the number of tons would be the same after it was cut up as when solid, but there was no claim for any such amount. The breasts had been previously mined, and plaintiff claimed that coal loosened by his blasting had run in from the surrounding vein and filled the cavity. The question before the jury therefore was not how many tons had nature packed there solidly in the formation of the coal measures, but how many tons of loose coal would slide into such a cavity when shaken from the adjoining vein by a miner's blast. Moreover, the answer treated the whole contents of that space as solid marketable coal, less the witness's deduction of five per cent for "blasting and loading waste." There was no evidence that this was the proper deduction for such waste and no allowance was made for "bone," slate, dirt, etc., which by the uncontradicted evidence constituted at least one fifth of the thirty feet thickness.

Nor were the dimensions given any safer guide than the estimate of the contents. There was no evidence that the breast was sixteen yards wide for its whole length. On the contrary, plaintiff himself testified that the regular width was "supposed to be eight yards" but where the pillar had given way it was sixteen yards on that account. There was no evidence what length of the pillar had given way at that point.

This was all the evidence as to the quantity of coal which plaintiff on his own view was entitled to pay for, and it is clear that the testimony of Dodge was not at all applicable to the condition of things shown, and without his testimony there was nothing in the case on which the jury could found even a guess as to the quantity.

The second assignment is to the admission of the testimony of Dodge as to the custom of mining " on the run." In answer to the question, he said : " There is a difference between driving coal on the yard and by the car on the run. A man driving a breast by the car on the run is entitled to all the coal that runs into the breast and down to the loading platform, no matter where it may come from. If he is driving on the lineal yard he is only entitled to length measure of the breast." This is all the testimony on the subject and it was offered and admitted " for the purpose of showing that is the way this coal was mined, " but there was no evidence of any such contract. Plaintiff himself did not say so, and Dodge of course knew nothing about the contract. The only direct evidence as to the contract was the testimony of the foreman that he told plaintiff and his " buddy" to " go in and take that breast." Plaintiff gave no express testimony as to the terms of the contract, and stated his claim to be for all the coal that came into the breast. as the result of his blasting. He made no claim for coal that came into the breast as the result of the squeeze, and if he had the jury could not have allowed it under the instruction of the judge in affirming defendant's second and third points. " The plaintiff is not entitled to recover for coal that fell within any breast that he worked by reason of a squeeze, even though some squeeze was produced by his blasting, unless the same was loaded out by the defendant, " and " the defendant had the right to remove the plaintiff from the breast at which he had been put to work if the safety of the mine or of the man himself demanded it." The testimony of plaintiff himself as well as all the others is that the mine had shown signs of " working " about a week, and finally a squeeze had set in which made further operations in those breasts dangerous, and the men were ordered out. Even accepting without qualification plaintiff's statement that the breast had filled when he was taken out, there is no sufficient evidence that that coal was brought down

by plaintiff's blasting and not by the squeeze, or the joint action of both, which under the instruction of the court had the same effect. In the face of the much more potent cause admittedly present plaintiff's doubtful statement, "I would rather think it was the labor and the burning of powder that caused it to cave in," hardly amounted to a scintilla.

On the whole case it is clear that even conceding plaintiff's claim there was no sufficient evidence on which the jury could estimate his damages; and secondly that no contract was proved which under the undisputed facts would entitle him to recover.

Judgment reversed.